## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **AUREALIA KELLY LYKES,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:15-cv-524-CLS** |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Aurealia Kelley Lykes, commenced this action on March 30, 2015, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the opinion of her treating physician, improperly considered her non-exertional impairments, and failed to properly develop the record. Upon review of the record, the court concludes that these contentions lack merit, and that the Commissioner's ruling is due to be affirmed.

## A.    Treating Physician

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to

give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate:   the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d).  *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Vanosia Faison, claimant's treating physician at Birmingham Health Care, wrote a letter "To Whom It May Concern" on July 30, 2013, stating, "Aurealia Lykes . . . is a patient of mine, whom of which [*sic*] I feel at this time is unable to work due to chronic back pain and knee pain."[1]  The ALJ gave that opinion little weight because "[t]he decision as to whether or not a claimant is unable to work is reserved to the Commissioner," and because "Dr. Faison's opinion is not consistent with the objective medical evidence suggesting that the claimant's back impairment is stable."[2]

That decision was in accordance with applicable law.  *See* 20 C.F.R. § 416.927(e), *supra.*   Dr. Faison did not describe any of claimant's functional

---

[1] Tr. 505 (alteration supplied).

[2] Tr. 28 (alteration supplied).

limitations, cite any medical findings, or even specify whether claimant's condition had lasted, or could be expected to last, for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). Accordingly, the ALJ was not required to afford the opinion any special weight.

The ALJ's decision to reject Dr. Faison's conclusory opinion also was supported by substantial evidence of record. Claimant asserts that the ALJ misinterpreted the use of the word "stable" in her medical records. The court does not agree. In an MRI report dated November 13, 2012, Dr. Faison noted "left lateralizing disc bulge at L5-S1 with superimposed central disc herniation. Encroachment on the left lateral recess and slight posterior displacement of the descending left S1 nerve root. Mild to moderate left neural foraminal stenosis."[3] Those findings reflected a condition that was "stable from 6/24/12."[4] Another MRI report from June 3, 2013 stated that the point of comparison was November 13, 2012. The findings were:

At L5-S1 there is moderate degenerative disk disease with a moderate

---

[3] Tr. 473.

[4] *Id.*

4

sized left paracentral disk protrusion.   This creates moderate left paracentral spinal stenosis with possible effacement of the left S1 nerve. The overall appearance is stable.

There is moderate degenerative facet disease bilaterally at this level that is also stable.  There is moderate bilateral neural foraminal stenosis, unchanged.

At L4-5 there is mild diffuse disk bulge and minimal overall spinal stenosis.  There is mild degenerative facet disease bilaterally.

The conus is at T12 the conus is unremarkable.[5]

The impression was:  "Stable MRI lumbar spine when compared to November 13, 2012.  Moderate sized left paracentral disk protrusion at L5-S1."[6]  These records simply reflect that the condition of claimant's spine had not changed significantly between June of 2012 and June of 2013.  During that time period, claimant exhibited no more than moderate findings, and her physical examination from June 24, 2012 revealed normal range of motion, no cranial nerve or sensory deficit, and full muscle strength, other than 4/5 strength in her hip flexors.[7]  In summary, claimant's condition had, indeed, been "stable" for some time, and the record did not reflect disabling limitations. While plaintiff has received diagnoses of lumbar nerve root disorder[8] and lumbar radiculopathy,[9] and she no doubt experiences pain as a result of those

---

[5] Tr. 493.

[6] *Id.*

[7] Tr. 262.

[8] *See, e.g.,* Tr. 252.

[9] *See, e.g.,* Tr. 479.

conditions, the physical findings generally are consistent with no more than moderate functional limitations.

## B.     Non-Exertional Limitations

Claimant asserts that the ALJ failed to properly consider all of her impairments in combination — including the non-exertional impairments of obesity, depression, and fatigue.   Social Security regulations state the following with regard to the Commissioner's duty in evaluating multiple impairments:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523.  *See also* 20 C.F.R.  §§ 404.1545(e), 416.945(e) (stating that, when the claimant has any severe impairment, the ALJ is required to assess the limiting effects of *all* of the claimant's impairments — including those that are not severe — in determining the claimant's residual functional capacity).  Here, the ALJ entered a finding that claimant did not have an impairment *or combination of impairments* that met or medically equaled one of the listed impairments, and she

stated that she had considered all of claimant's symptoms.[10]  Under Eleventh Circuit

law, statements of that sort are sufficient to indicate that the ALJ properly considered

all of claimant's impairments.  *See Wilson v. Barnhart,* 284 F.3d 1219, 1224 (11th

Cir. 2002); *Jones v. Dept. of Health and Human Services,* 941 F.2d 1529, 1533 (11th

Cir. 1991).

Moreover, it is apparent from the ALJ's decision that she adequately

considered claimant's obesity, depression, and fatigue, despite the fact that she did

not consider any of those conditions to constitute severe impairments.  With regard

to claimant's obesity, the ALJ stated:  "the effect that this condition has on the

claimant's overall ability to perform work related functions, either singly or in

combination with other impairments, has been considered in accordance with SSR

02-1p."[11]  Even so, there was "no suggestion in the record that she has any functional

limitations associated with this impairment . . . ."[12]  That decision was consistent with

the requirements imposed by Social Security Ruling 02-1p, which states the

following:

> Obesity can cause limitation of function.  The functions likely to
> be limited depend on many factors, including where the excess weight
> is carried.  An individual may have limitations in any of the exertional
> functions such as sitting, standing, walking, lifting, carrying, pushing,

---

[10] Tr. 24.

[11] *Id.*

[12] Tr. 21.

and pulling.  It may also affect ability to do postural functions, such as climbing, balancing, stooping, and crouching.  The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers.  The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious.  For example, some people with obesity also have sleep apnea.  This can lead to drowsiness and lack of mental clarity during the day.  Obesity may also affect an individual's social functioning.

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.  Individuals with obesity may have problems with the ability to sustain a function over time.  As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.  This may be particularly true in cases involving sleep apnea.

The combined effects of obesity with other impairments may be greater than might be expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

For a child applying for benefits under title XVI, we may evaluate the functional consequences of obesity (either alone or in combination with other impairments) to decide if the child's impairment(s) functionally equals the listings.  For example, the functional limitations imposed by obesity, by itself or in combination with another impairment(s), may establish an extreme limitation in one domain of functioning (*e.g.*, Moving about and manipulating objects) or marked limitations in two domains (*e.g.*, Moving about and manipulating objects

8

and Caring for yourself).

> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1P, 2000 WL 628049, at *6-7.  The ALJ's findings also were supported by

substantial evidence.  As discussed above, claimant only suffered from moderate

clinically determinable impairments, and the court's review of the medical records did

not reveal any occasion on which a medical provider suggested that claimant's

condition was being made worse by her obesity.

The ALJ also properly considered claimant's depression.  Despite finding that

claimant's depression was a non-severe impairment, the ALJ discussed in detail the

effect depression had on claimant's ability to function in multiple areas.[13]  The ALJ

also considered claimant's depression in crafting her residual functional capacity

finding.[14]

Finally, the ALJ credited claimant's complaints of fatigue, and accounted for

them by finding that "claimant must work in an environment that does not have

stringent production or speed requirements [and] thus [she] may not perform fast pace

assembly line work."[15]  Claimant criticizes those restrictions as being "vague and

---

[13] Tr. 22-23.

[14] Tr. 27.

[15] Tr. 28 (alterations supplied).

subjective," and asserts they were "not expressed in vocational terms which must quantify the limitation in fractions or hours of the work day defined as for example occasional or two hours total."[16]   Claimant's citation for that assertion is Social Security Ruling 83-10, which addresses a claimant's capability to do other work under the Medical-Vocational Guidelines ("Grids").  SSR 83-10 defines terms like "occasional" in the context of a claimant's ability to do other work, but claimant has not cited any authority — and this court has found none — applying SSR 83-10 to hold that an ALJ must always use quantifiable terms like "occasional" when describing a claimant's limitations.  Moreover, there actually is a quantification implicit in the ALJ's finding.  The ALJ found that claimant's work environment must be free of *all* stringent production or speed requirements, implying that claimant can *never* perform fast-paced assembly line work.  Finally, the limitations the ALJ placed on claimant's ability to do fast-paced work appear to have been sufficiently clear and specific for the vocational expert to determine their effect on claimant's ability to perform jobs existing in significant numbers in the national economy.[17]

## C.    Failure to Develop Record

The claimant also argues that the ALJ failed to properly develop the administrative record because she did not rely upon a medical source opinion in

---

[16] Doc. no. 9 (Claimant's Brief), at 8.

[17] *See* Tr. 56-59.

formulating claimant's residual functional capacity. It is true that the ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision. Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 F. App'x 597, 598 (11th Cir. 2005) (emphasis supplied).

Furthermore, claimant bears the ultimate burden of producing evidence to support her

disability claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003)

(citing 20 C.F.R. §§ 416.912(a), (c)). The court concludes that the record in this case

was sufficient, even without a medical source statement from a treating or consulting

source, for the ALJ to arrive at an informed decision.

In summary, the court concludes the ALJ's decision was based upon substantial

evidence and in accordance with applicable legal standards. Accordingly, the

decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The

Clerk is directed to close this file.

DONE this 21st day of December, 2015.

_____

11

United States District Judge